BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re EPIPEN MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 2785 |

**RAINEY PLAINTIFFS' BRIEF IN SUPPORT OF THE MOTION TO TRANSFER**

Plaintiffs Amber Rainey, Christina Kollmeyer, and Lisa Vogel (the "*Rainey* Plaintiffs"), who filed an action in the United States District Court for the Western District of Washington, respectfully submit this brief in support of the Section 1407 Motion to Transfer filed by Angie Nordstrum and Carly Bowersock and contend that, for all the reasons set forth in the brief in support of that Motion, these cases should be transferred to the District of New Jersey. However, in the event the Panel is disinclined to transfer all cases to the District of New Jersey, the *Rainey* Plaintiffs submit this brief to propose that, alternatively, the *Aggarwal* case be transferred to the District of Kansas, and that the remaining PBM-related cases remain in the District of New Jersey where they can be coordinated. (To this end, the *Rainey* Plaintiffs would not oppose a Section 1404 transfer of their action to the District of New Jersey.)

At core, there have been two types of cases filed with alternative theories about the inflated price of EpiPens. The first type of case, represented by the consolidated actions currently pending in the District of Kansas and the *Aggarwal* case pending in the Northern District of Illinois, allege that Mylan charged excessive prices for EpiPens because of a variety of deceptive and anti-competitive conduct. In summary, those plaintiffs allege that Mylan: (a) withdrew EpiPen single packs from the market and exclusively sold EpiPens in an expensive two-pack, and made fraudulent claims about the two-pack; (b) entered into anti-competitive agreements with school districts to prevent them from buying EpiPen competitors, and (c) engaged in various actions designed to deter generic entry. Importantly, the Kansas Plaintiffs recently filed a nearly 300-page consolidated complaint that purported to represent all theories being pursued by those plaintiffs.

The second type of case, represented by the *Rainey* Plaintiffs and a number of cases subsequently filed in the District of New Jersey, alleges that, in exchange for favorable

formulary placement, Mylan paid Pharmacy Benefit Managers ("PBMs") large "rebates" which fraudulently inflated the list price of EpiPens. None of the first type of cases contains *any* allegations regarding Mylan's payment of rebates to PBMs. In fact, those cases do not address PBMs at all.

Granting the Motion to Transfer will ensure that the plaintiffs pursuing PBM-related facts will be represented by counsel who have devoted and will continue to devote the resources necessary to developing those facts.

## I. BACKGROUND

### A. Summer 2016: EpiPen's Skyrocketing List Prices Receive Public Scrutiny

Since Mylan acquired the rights to market and distribute EpiPen in 2007, it has increased the list price of EpiPens seventeen times, representing a 574 percent increase. In the summer of 2016, those price increases finally received public scrutiny, when, because of a "perfect storm" in (a) the growth of high-deductible plans, (b) rising coinsurance rates, and (c) an increase in the number of Medicare Part D plans, more consumers had to pay for EpiPens based on that list price.

The fervor over EpiPen's list prices culminated on September 21, 2016, when Mylan N.V.'s CEO, Heather Bresch, testified before the House of Representatives Committee on Oversight and Government Reform. During that testimony, she explained that the skyrocketing list prices for EpiPens was due to "the complicated world of pharmaceutical pricing," including the rebates and discounts Mylan pays to PBMs and other intermediaries in the pharmaceutical distribution chain.[1]

[1] *See* Hearing Before the H. Comm. on Oversight & Gov't Reform, 114th Cong. (Sept. 21, 2016) (testimony of Mylan CEO Heather Bresch), available at https://oversight.house.gov/wp-content/uploads/2016/09/2016-09-21-Mylan-CEO-Bresch-Testimony.pdf.

### B. The Kansas Action

In late 2016, as the fervor over EpiPen prices was quieting, eight cases were filed around the country alleging various theories on why EpiPen prices were inflated. Ultimately, counsel in those eight cases consolidated their actions in the District of Kansas and, on February 1, 2017, filed a consolidated 280-page Second Amended Complaint. *See* Second Amend. Class Action Compl., Ex. C to Motion to Transfer.

Importantly, even though the Kansas Plaintiffs have represented that their complaint was designed to "get all of the theories before the court all in one case,"[2] the complaint in the Kansas Action says nothing about PBMs and does not pursue the PBM-related facts.

#### 1. The *Aggarwal* (N.D. Ill.) Action

On March 21, 2017, Vishal Aggarwal filed an action in the Northern District of Illinois under the Illinois Deceptive Practices and Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, on behalf of Illinois consumers, alleging that Mylan's withdrawal of single packs of EpiPens from the market allowed it to charge unconscionable prices. *See Aggarwal* Compl., Ex. B to Motion to Transfer, ¶¶ 23-24, 33-34, 65.

Like the Kansas Action, the *Aggarwal* Complaint says nothing about PBMs.

### C. The PBM Actions

#### 1. *Rainey* Action

The *Rainey* Plaintiffs filed their action on April 3, 2017, alleging that Mylan violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, and numerous state consumer protection statutes. *See Rainey* Compl., Ex. E to Motion to Transfer. Specifically, the *Rainey* Action alleges that, as Mylan admitted in the summer of 2016, Mylan

---

[2] *See* Transcript of Motion Hearing and Status Conference, *Serrano v. Mylan, N.V.* (D. Kan.) (Apr. 25, 2017), Exhibit 1 hereto, at 7:10-12.

paid excessive rebates to PBMs to obtain favorable formulary placement for EpiPen and to disadvantage Mylan's competitors, and that those rebates inflated EpiPen's list price. The *Rainey* Action is brought by consumers who paid for EpiPens based on that inflated list price.

**2. *Nordstrum* Action**

After the *Rainey* Plaintiffs filed their case, the *Nordstrum* plaintiffs, the movants here, filed an action in the United States District Court for the District of New Jersey. The *Nordstrum* complaint alleges that Mylan monopolized the market for epinephrine auto-injectors by: (1) foreclosing the market to generic competition; (2) entering into exclusive dealing agreements with school districts to shut competitors out of public schools; and (3) sharing its monopoly rents with PBMs. *See Nordstrum* Compl., Ex. D to Motion to Transfer, ¶ 8 (summarizing allegations).

**3. *Sanofi* Action**

Subsequently, on April 24, 2017, Sanofi-Aventis U.S. LLC, manufacturer of Auvi-Q, a competitor to EpiPen, similarly filed a Complaint in the District of New Jersey alleging its product was nearly driven from the market by Mylan's anti-competitive conduct, including the payment of unprecedented rebates to PBMs. *See Sanofi* Compl., Ex. F to Motion to Transfer, ¶¶ 6, 54-71.

**4. *Castillo* Action**

On May 1, Cesar Castillo, Inc., a wholesaler, filed an action in the District of New Jersey substantially similar to the *Nordstrum* Action, but on behalf of direct purchasers. *See* Ex. 2 hereto.

## II. ARGUMENT

As set forth above, the first set of plaintiffs who have filed cases related to the pricing of EpiPens, represented by the Kansas Plaintiffs and the *Aggarwal* Action, allege a variety of

different types of conduct by Mylan intended to inflate the price of EpiPens, while the second set of plaintiffs, represented by the *Rainey* Plaintiffs and all of the plaintiffs who have filed in the District of New Jersey ("the PBM-related cases"), allege that Mylan conspired with PBMs to inflate the list price of EpiPens. The Motion to Transfer should be granted because the State of New Jersey has a strong connection to this litigation (and the District of Kansas has no such connection) and New Jersey is an accessible and convenient venue with multiple judges experienced in MDLs and complex litigation, including Judge Arleo. Moreover, the Motion to Transfer should be granted to ensure that the PBM-related cases are pursued by counsel interested in and capable of pursuing those facts.

### A. In the Alternative, the PBM Cases Should Remain in the District of New Jersey and Be Coordinated, to the Extent Necessary, with the Kansas Action

In the alternative to Section 1407 transfer, the *Aggarwal* Action should be transferred to the District of Kansas, while the PBM-related cases should remain in the District of New Jersey (and the *Rainey* Action can be transferred to the District of New Jersey under Section 1404 to accomplish this). To the extent necessary, the PBM-related cases in the District of New Jersey could then be coordinated with the Kansas Action. *See In re Gaiam, Inc. Water Bottle Mktg., Sales Practices & Prods. Liab. Litig.*, 672 F. Supp. 2d 1373, 1374-75 (J.P.M.L. Feb. 4, 2010) ("[w]here there are only a limited number of actions and the involved parties are amenable to Section 1404 transfer, such transfer is generally preferable to centralization under Section 1407").

#### 1. The PBM-related cases have factual differences that distinguish them from the Kansas Action

While all of the purchaser cases allege that EpiPen was over-priced, allowing the PBM-related cases to proceed on a separate track from the cases in the Kansas Action will ensure that the PBM-related claims are vigorously prosecuted by counsel prepared to do so. While the Panel

has consistently held that "differing theories of liability . . . are not a bar to centralization where common factual issues exist,"[3] it looks at "the facts underlying those theories . . . in making our determination under Section 1407."[4] Here, the facts alleged in the PBM-related cases are meaningfully different from the facts alleged by the first set of plaintiffs in the PBM-related cases such that, if PBM-related cases are sent to the District of Kansas, they will be at least overshadowed, if not completely ignored, by counsel not interested in pursuing the facts alleged in those cases. For that reason, if all the cases are not sent to the District of New Jersey as a Section 1407 transfer, the PBM-related cases should, at a minimum, be allowed to proceed separately in that District.

Indeed, this is not an instance where, based on nearly identical facts, various plaintiff groups are pursuing alternative claims for relief that can be consolidated into a single complaint. Instead, this is a case where two different plaintiff groups are alleging separate facts. *See, e.g.*, *In re Starbucks Corp. Mktg. & Sales Practices Litig.*, MDL No. 2725, 2016 WL 4153601, at *1 (J.P.M.L. Aug. 5, 2016) (denying motion to transfer where there were "different factual theories of liability"); *In re Gaiam, Inc. Water Bottle Mktg.*, 672 F. Supp. 2d at 1375 (declining to transfer cases with different facts and theories, simply because those cases also involved marketing of BPA). For this reason, there would be no real efficiencies from having the PBM-related cases in the District of Kansas, as the arguments made in the motions to dismiss or other pretrial motions will not be the same. For example, none of the Mylan Defendants' dismissal arguments in the Kansas Action[5] would apply to the facts pled in the *Rainey* Action.

---

[3] *In re Daily Fantasy Sports Mktg. & Sales Litig.*, 158 F. Supp. 3d 1375, 1379 (J.P.M.L. 2016).

[4] *In re Holiday Magic Secs. & Antitrust Litig.*, 375 F. Supp. 1400, 1402 (J.P.M.L. 1974).

[5] *See* Dkt No. 99, *Serrano v. Mylan N.V.*, Case No. 16-CV-2711-JWL (D. Kan).

In addition, discovery in the PBM-related cases is likely to be very different from the discovery sought in the Kansas Action. *See In re Express Scripts Holding Co. Secs., Derivative & Emp. Retirement Income Sec. Act (ERISA) Litig.*, MDL No. 2769, 2017 WL. 1283669, at *1 (J.P.M.L. Apr. 5, 2017) (declining consolidation because, *inter alia*, ERISA case "raises case-specific factual and legal issues" which were "likely to undermine the alleged efficiencies that could be gained from centralizing an already minimal number of actions"); *Starbucks Corp.*, 2016 WL 4153601, at *1 ("These factual dissimilarties likely will result in discovery, pretrial motions, and class certification issues that are not shared across the beverage categories."). As the most obvious example, the PBM-related cases will require extensive discovery from the three major PBMs—discovery which is not relevant to the Kansas Action at all.

**2. The *Sanofi* Action should be coordinated with the PBM-related cases**

In its Opposition to the Motion to Transfer (Doc. No. 33), Sanofi argues that coordinating its case with the purchaser cases attempts "to fit a square peg into a round hole" (*id.* at 2) because, as a competitor to Mylan, Sanofi's damages will by definition be different than the purchaser cases, and because the purchaser cases will have to litigate class certification issues that are not applicable to Sanofi. *See* Sanofi Opp. at 4-5.[6] However, the Panel routinely transfers competitor cases that share common facts with class proceedings brought by direct and indirect purchasers. *See, e.g., In re McCormick & Co., Inc. Pepper Prods. Mktg. & Sales Practices Litig.*, 148 F. Supp. 3d 1364, 1366 (J.P.M.L. 2015) ("We do not see the litigation, taken as a whole, as benefitting from the exclusion of [a competitor case] from the MDL, given

[6] Sanofi also contends that the purchaser actions are different because they challenge "[a]lleged misrepresentations . . . to consumers and the public regarding EpiPen pricing . . ." (*id.* at 4-5), but, in the case of the PBM-related cases, those misrepresentations relate to the list price of EpiPen, which was inflated by virtue of Mylan's PBM-related conduct described in all of the PBM-related cases.

its clear factual overlap with the other cases."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1362 (J.P.M.L. 2014) (transferring actions that included three actions brought by competitors even though they alleged "unique harms to them as competitors"); *In re Warfarin Sodium Antitrust Litig.*, 1998 WL 35413100 (J.P.M.L. June 3, 1998) (rejecting argument made by competitor that its action should not be consolidated when "all actions share questions of fact concerning DuPont's allegedly monopolistic conduct."). Moreover, most of the "differences" between the purchaser actions and the *Sanofi* Action identified by Sanofi are differences with the Kansas Action, not differences between the *Sanofi* Action and the *Rainey, Nordstrum,* or *Cesar Castillo* Actions.[7]

**B. The PBM Cases Should Not Be Transferred to the District of Kansas**

While the efforts of the Kansas Plaintiffs to informally coordinate their efforts and file a consolidated complaint should be commended, even after Mylan N.V.'s CEO testified under oath to the payment of intermediaries in the pharmaceutical distribution system, and even after multiple law firms put together their best theories of liability, those plaintiffs either ignored or chose not to allege the PBM-related facts in the *Rainey, Nordstrum, Sanofi* and *Castillo* actions. If the PBM-related actions are transferred to the District of Kansas, which is being led by counsel who excluded the facts the PBM-related actions have alleged, those plaintiffs could be significantly prejudiced.

Both Judge Lungstrum in the District of Kansas and Judge Arleo in the District of New Jersey are experienced jurists with significant experience in complex litigation. There is no reason that the Kansas Action and the PBM-related cases in the District of New Jersey cannot be

---

[7] Sanofi points to paragraphs 91, 121-22, and 126 of the *Rainey* Complaint, but those paragraphs describe Mylan's fraudulent concealment for purpose of the statute of limitations, and describe Mylan's predicate acts of mail fraud for purposes of its RICO claims.

coordinated to the extent necessary. Doing so would allow the District of Kansas action to proceed without further interruption and protect the interests of the plaintiffs pursuing PBM-related facts.

## III. CONCLUSION

For all of the above reasons, the *Rainey* Plaintiffs join in the Motion to Transfer but, to the extent the Panel is not inclined to grant the Motion, suggest that the PBM-related cases remain in the District of New Jersey (and do not oppose a transfer of the *Rainey* Action under 28 U.S.C. § 1404 to accomplish that end).

Dated: May 17, 2017

Respectfully submitted,

s/ Steve W. Berman
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Jennifer Fountain Connolly
HAGENS BERMAN SOBOL SHAPIRO LLP
1701 Pennsylvania Ave. NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 248-5403
Facsimile: (202) 580-6559
jenniferc@hbsslaw.com

Craig L. Briskin
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: (202) 822-5100
Cbriskin@Findjustice.com

*Attorneys for Amber Rainey, Christina Kollmeyer and Lisa Vogel*