**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE EPIPEN MARKETING AND SALES PRACTICES LITIGATION** | **MDL Docket No. 2785** |

# RESPONSE OF PLAINTIFF AGGARWAL IN SUPPORT OF TRANSFER OF THE RELATED ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Plaintiff Vishal Aggarwal ("Aggarwal"),[1] by and through counsel, hereby responds to the motion to transfer filed by New Jersey Plaintiffs (Doc. 1). This response also addresses the responses filed by Kansas Plaintiffs (Doc. 7), plaintiff Cesar Castillo, Inc. (Doc. 8), and plaintiff Sanofi-Aventis U.S. LLC (Doc. 33).

Aggarwal agrees that coordination is appropriate and requests that the Related Actions[2] be transferred to the Honorable Robert M. Dow, Jr., United States District Court of the Northern District of Illinois, for coordinated pretrial proceedings. Because the Related Actions involve common questions of fact (although generally not common questions of law), centralization will prevent duplicative discovery, conserve the resources of the parties and the judiciary, and prevent inconsistent rulings as to class certification and other matters. The arguments opposing centralization are unpersuasive. None of the Related Actions is materially more advanced than the others, there is no realistic reason to believe an agreement can be reached on coordination or

[1] Aggarwal is the plaintiff in *Aggarwal v. Mylan Pharm. Inc.*, No. 1:17-cv-02189-RMD (N.D. Ill.).

[2] The "Related Actions" means *Aggarwal v. Mylan Pharm. Inc.*, No. 1:17-cv-02189-RMD (N.D. Ill.); *Serrano v. Mylan N.V.*, No. 16-CV-2711 (D. Kan.); *Nordstrum v. Mylan Inc.*, No. 2:17-cv-02401 (D.N.J.); *Sanofi-Aventis U.S. LLC v. Mylan Inc.*, No. 3:17-cv-02763 (D.N.J.); *Cesar Castillo, Inc. v. Mylan, Inc.*, No. 2:17-cv-02813 (D.N.J.); and *Rainey v. Mylan Specialty, L.P.*, No. 3:17-cv-05244 (W.D. Wash.).

consolidation, efforts to end-run the MDL process by forcing the stay or dismissal of certain Related Actions are likely to (and should) fail, and, under the circumstances, attempting to coordinate informal discovery absent centralization would be ponderous, unnecessarily time-consuming, costly, and extraordinarily inefficient.

Judge Dow is an excellent choice to preside over centralized proceedings in this complex and high-profile MDL. Judge Dow is an experienced MDL jurist, serves as Chairman of the Rule 23 subcommittee for the Advisory Committee on Civil Rules, and is familiar with the issues in the litigation, having presided over an antitrust MDL and several complex cases involving pharmaceutical and medical device companies. He also appears to be available, as class certification was recently denied in the lone MDL he currently presides over and two stipulations of dismissals have since been filed. Without in any way taking away from the abilities of the other judges presiding over any of the Related Actions, the combination of his experience, qualifications, and MDL docket situation strongly suggest that he is the natural and superior choice to preside over the Related Actions through the consolidated process ahead.

## **BACKGROUND**

Mylan defendants' skyrocketing increases in the price of EpiPens—emergency, spring-loaded epinephrine injector devices relied on by millions of Americans to treat life-threatening allergic reactions—have been the subject of Congressional condemnation, numerous news articles, and public outcry. Although the legal theories differ, Mylan defendants' price hikes are a central issue in each of the six Related Actions. *See Aggarwal v. Mylan Pharm. Inc.*, No. 1:17-cv-02189-RMD (N.D. Ill.) (alleging unfair trade practices in violation of Illinois consumer protection law); *Serrano v. Mylan N.V.*, No. 16-CV-2711 (D. Kan.) (alleging RICO violations and claims under antitrust and state consumer protection statutes); *Nordstrum v. Mylan Inc.*, No. 2:17-cv-02401

(D.N.J.) (alleging end-user antitrust claims); *Sanofi-Aventis U.S. LLC v. Mylan Inc.*, No. 3:17-cv-02763 (D.N.J.) (alleging competitor antirust claims); *Cesar Castillo, Inc. v. Mylan, Inc.*, Case No. 2:17-cv-02813 (D.N.J.) (alleging direct purchaser antitrust claims); *Rainey v. Mylan Specialty, L.P.*, No. 3:17-cv-05244 (W.D. Wash.) (alleging RICO violations and state consumer protection claims).

## ARGUMENT

Centralization of the Related Actions before the Honorable Robert M. Dow, Jr., in the Northern District of Illinois for coordinated or consolidated pretrial proceedings will eliminate duplicative discovery, prevent inconsistent pretrial orders, and serve the convenience of the parties, witnesses, and the judiciary.

### A. Centralization of the Related Actions for Pretrial Proceedings Is Warranted

The Related Actions all share common factual allegations pertaining to Mylan's pricing of EpiPens. Separated from the unlikely occurrence of early resolution, a diminishing possibility in the current litigation world, discovery will be complex and extensive, and will center on the circumstances surrounding the skyrocketing prices of EpiPens and the damages to consumers and others because of the unconscionable price increases. Centralization will eliminate duplicative discovery, conserve the resources of the parties and the judiciary, and prevent inconsistent pretrial rulings on discovery disputes, class certification, and other matters.

The driving force behind Kansas Plaintiffs' opposition to centralization appears to be an attempt to protect their counsels' interim leadership appointments in the Kansas case—a fact bolstered by their decision to attach the curious interim leadership appointment order to their filing. Putting aside the fact that the perceived interests of counsel are not valid grounds for opposing centralization, and the patently strategic, piecemeal, and contra-coordination the order they

pursued before the Kansas judge represents, Kansas Plaintiffs' attempts to justify their opposition fail.

The Related Actions are at materially the same stage. Kansas Plaintiffs' operative complaint was filed on February 3, 2017—a little over three months ago. No discovery has been conducted in the Kansas case, discovery is stayed, and Kansas Plaintiffs have not responded to the defendants' motions to dismiss. Kansas Plaintiffs' argument that their case is materially more advanced than the other Related Actions is at best overstatement.

Although Aggarwal's counsel firmly believe counsel should come together to centralize related proceedings without the Panel's involvement whenever possible, they have seen nothing that would indicate such an agreement is probable in this litigation. Kansas Plaintiffs take credit for the informal consolidation of eight cases. Yet, the plaintiffs from three of those cases are absent from their operative complaint and five of the seven plaintiffs from a fourth case do not appear in the operative complaint. In any event, Kansas Plaintiffs' actions belie their assertion that there are viable alternatives to a centralized MDL proceeding. "Their way or the highway" is not productive where their way is patently not the better way.

Kansas Plaintiffs' attempts to eliminate the other end-purchaser Related Cases have virtually no chance of succeeding. Contrary to their implication that coordination through cooperation is possible, Kansas Plaintiffs have filed a motion to stay the Illinois Case and, additionally, have moved to stay or transfer the *Rainey*, *Nordstrum*, and *Cesar Castillo, Inc.*, cases. Because Kansas Plaintiffs' motions were filed in the District of Kansas, the motions should have no chance of succeeding. Judge Lungstrum, sitting in Kansas, lacks authority to order Article III district judges in Illinois, New Jersey, and Washington to transfer or stay cases pending before them. Judge Lungstrum appeared to recognize that fact at a May 4, 2017 status conference in the

Kansas case, informing Kansas Plaintiffs' counsel of their failure to cite any cases supporting that he had "the power to go around and tell other judges in other districts not to do things under a first-filed rule which may or may not be applicable in their own circuit." Tr. at 11–12, attached hereto as Exhibit A.

Mylan Defendants' attempt at an end-around of the MDL process, through filing a motion to transfer the Aggarwal's Case under 28 U.S.C. § 1404(a) in the Northern District of Illinois, also has little chance of succeeding. Absent all parties' consent, a district court may only transfer a case under Section 1404(a) to a district "where [the case] might have been brought." 28 U.S.C. § 1404(a). Aggarwal asserts a single Illinois unfair trade practice claim on behalf of himself and other similarly situated individuals who purchased EpiPens in Illinois for their own use or use by a member of their household. Additionally, neither Aggarwal nor Mylan Defendants are citizens of the State of Kansas. Because Aggarwal's case has no connection to Kansas, it could not have been brought there, and transfer to the District of Kansas is unavailable under Section 1404.

Absent centralization, attempting to coordinate discovery in the Related Actions would be costly, extraordinarily inefficient, and could lead to inconsistent rulings. Although the six Related Actions share certain common questions of fact, the legal theories asserted are not the same in each case. As the cases currently stand, it is reasonable to conclude that plaintiffs' counsel in the Related Actions would have differing views as to which witnesses and facts are important. Attempting to coordinate the questioning of a witness viewed as important by plaintiffs' counsel in all six cases could be a logistical nightmare. Cross-noticing depositions and stipulations to share discovery would not resolve these significant issues, as Kansas Plaintiffs assert.

In its response brief, Sanofi-Aventis U.S. LLC opposes centralization on grounds that its competitor antitrust action is different than the other Related Actions, each of which asserts class

claims. The Panel has previously centralized competitor, direct purchaser, and indirect purchaser antitrust cases stemming from similar operative facts to further efficiency, for the convenience of the parties and witness, and to conserve judicial resources. Sanofi-Aventis U.S. LLC fails to explain why centralizing the Related Actions for common discovery is not the most efficient choice here.

### B. Transfer of the Related Actions to the Honorable Robert M. Dow, Jr., in the Northern District of Illinois, Is Most Appropriate

Transfer of the Related Actions to the Honorable Robert M. Dow, Jr., in the Northern District of Illinois, is most appropriate because: (1) Judge Dow is an experienced MDL jurist, possesses significant knowledge of class action procedure and the underlying issues in the litigation, and the single MDL he presides over appears near conclusion; (2) the Northern District of Illinois courthouse in Chicago, Illinois, is centrally located and readily accessible to the parties and witnesses; and (3) none of the proposed transferee courts is located within 300 miles of the Mylan Pharmaceuticals Inc.'s headquarters in Western Pennsylvania or Mylan Specialty, L.P.'s headquarters in West Virginia.

#### 1. Judge Dow Is Well-Suited to Preside Over Centralized Proceedings

Judge Dow's experience, knowledge of the issues in the litigation, and availability render him well-suited to preside over centralized proceedings for the Related Cases. As the Chairman of the Rule 23 Subcommittee for the Advisory Committee on Civil Rules, Judge Dow is well-versed on issues relating to class certification. He is also knowledgeable of the issues in this case, having presided over an MDL asserting antitrust claims[3] and a series of complex cases involving

[3] Judge Dow presided over coordinated or consolidated pretrial proceedings in *In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation*, MDL 2031, wherein the plaintiffs alleged that the defendants engaged in a conspiracy to and did artificially inflate the prices of certain milk and cheese products.

pharmaceutical and medical device companies.[4] He also appears ready for a new MDL, because in March he denied class certification in the single MDL he presides over and two stipulations of dismissal have since been filed. *See In re Fluidmaster, Inc., Water Connector Components Pruds. Liab. Litig.* ("*Fluidmaster, Inc.*), Case No. 14-cv-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017); *see also* Stipulation of Dismissal, *Fluidmaster, Inc.*, Case No. 14-cv-5696 (Apr. 14, 2017); Stipulation of Dismissal, *Fluidmaster, Inc.*, Case No. 14-cv-5696 (Apr. 14, 2017).

Kansas Plaintiffs avoid the fact that Judge Lungstrum currently presides over one of the largest MDLs in the country, *In re Syngenta AG MIR 162 Corn Litigation*, MDL 2591, involving over 800 individual cases.[5] Kansas Plaintiffs' characterization of the *Syngenta* MDL as in its "end stages," is hard to envision as accurate. Since March 1, 2017, there have been over 190 filings in that MDL relating to, among other things, motions to exclude expert testimony, summary judgment, deposition notices, motions to compel production of certain documents, motions to dismiss, and motions in limine.

Even cursory review of the docket reveals the *Syngenta* MDL is not close to finished. The *Syngenta* MDL plaintiffs collectively assert claims on behalf of putative classes in twenty-one states. In October 2015, Judge Lungstrum ordered that the parties select eight states (four to be chosen by each side) to serve as bellwether states for discovery, class certification, and trial.

---

[4] *See, e.g.*, *Bone Care Int'l v. Pentech Pharm., Inc.*, No. 08-cv-1083 (N.D. Ill.) (alleged patent infringement); *Zubrick v. Endo Pharm., Inc.*, No. 11-cv-8543 (N.D. Ill.) (alleged deceptive trade practices); *New England Carpenters Health & Welfare Fund v. Abbott Labs*, No. 12-cv-1662 (N.D. Ill.) (alleged RICO violations); *Pfizer Inc. v. Apotex Inc.*, Nos. 08-cv-7231,09-cv-6053 (N.D. Ill.) (patent litigation regarding Lipitor generic); *Genzyme Cop. v. Cobrek Pharm., Inc.*, No. 10-cv-00112 (N.D. Ill.) (patent infringement case involving generic version of Hectorol).

[5] *See* JPML, MDL Statistics Report – Distribution of Pending MDL Dockets by District (May 15, 2017), http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2017.pdf (identifying 838 active cases in the *Syngenta* MDL).

*Syngenta* MDL, Scheduling Order No. 2 at 5–7 (Oct. 21, 2015). In September 2016, Judge Lungstrum certified all eight bellwether state classes. *Syngenta* MDL, Mem. & Order (Sept. 26, 2016). The first bellwether trial involving the Kansas claims is scheduled for this summer, but the parties disagree as to how the remaining bellwether state class claims must be tried—the plaintiffs support two trials while the defendant has argued that seven trials will be needed. *See Syngenta* MDL, Trial Order (Mar. 8, 2017); *Syngenta* MDL, Pls.' Mot. to Consol. Cases for Trial (Apr. 19, 2017); *Syngenta* MDL, Defs.' Mem. in Opp'n to Pls.' Mot. to Consol. Cases for Trial (May 4, 2017). Regardless of which view Judge Lungstrum adopts, if the parties do not reach a comprehensive settlement after the bellwether trials, which is certainly possible, the putative class claims for the thirteen non-bellwether states will need to be resolved, necessitating additional discovery, class certification proceedings, and potentially trials. Absent a change in circumstances, the *Syngenta* MDL will continue to require significant time and attention from Judge Lungstrum for the foreseeable future.

**2. The Northern District of Illinois is a Central and Convenient Location**

The centrality and accessibility of the Northern District of Illinois render it a convenient transferee court for the parties and witnesses. EpiPens were sold nationwide and the parties and potential witnesses are located throughout the country, including on the East Coast and the West Coast. As the Panel has observed on numerous occasions, the centrality and accessibility of the Northern District of Illinois's courthouse in Chicago make it a favorable destination for MDLs with a national scope. *In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litig.*, 201 F. Supp. 3d 1375, 1378 (J.P.M.L. 2016); *In re: Walgreens Herbal Supplements Marketing and Sales Practices Litig.*, 109 F. Supp. 3d 1373, 1376 (J.P.M.L. 2015); *In re McDonald's French Fries Litig.*, 444 F. Supp. 2d 1342, 1343 (J.P.M.L. 2006); *In re Ameriquest Mortg. Lending Practices*

*Litig.*, 408 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005). From a convenience standpoint, the location is preferable to courthouses in Newark, New Jersey, and Tacoma, Washington, each of which would require parties and witnesses located on the opposite coast to fly across the country. The Northern District of Illinois' Chicago courthouse is located within minutes of two of the nation's largest airports, rendering the locale more accessible than Kansas City, which is serviced by a single regional airport.

**3. None of the Proposed Transferee Courts Is Located Within 300 Miles of Mylan's Headquarters**

The primary defendant, Mylan Pharmaceuticals Inc., is located near Pittsburgh, Pennsylvania, which is almost as close to Chicago, Illinois (approx. 400 miles) as it is to Newark, New Jersey (approx. 315 miles). Mylan Specialty L.P.'s headquarters is in Morgantown, West Virginia, which is approximately 430 miles from Chicago, Illinois, and approximately 315 miles from Newark, New Jersey. Mylan employees would almost certainly fly to any hearing conducted by the transferee court—rendering these differences non-consequential. Additionally, documents produced through discovery will almost certainly be produced in electronic format. The location of the potential transferee courts as compared to Mylan's headquarters does not support that any potential court is more convenient than the Northern District of Illinois.

## CONCLUSION

For the foregoing reasons, the Panel should centralize the Related Actions and any subsequently filed tag-along actions in the Northern District of Illinois for coordinated or consolidated pretrial proceedings before the Honorable Robert M. Dow, Jr.

DATED: May 17, 2017

Respectfully submitted,

By: s/ Ben Barnow

Ben Barnow
Erich P. Schork
BARNOW AND ASSOCIATES, P.C.
1 North LaSalle St., Suite 4600
Chicago, Illinois 60602
Tel: (312) 621-2000
Fax: (312) 641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

Timothy G. Blood
BLOOD HURST & O'REARDON, LLP
701 B Street, Ste. 1700
San Diego, CA 92101
Tel: (619) 338-1100
Fax: (619) 338-1101
tblood@bholaw.com

*Attorneys for Plaintiff Aggarwal*