**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: EPIPEN (EPINEPHRINE INJECTION, USP) MARKETING, SALES PRACTICES AND ANTITRUST LITIGATION | MDL Docket No. 2785 |

**THE MYLAN DEFENDANTS' RESPONSE IN OPPOSITION TO THE *NORDSTRUM* PLAINTIFFS' MOTION TO TRANSFER TO, AND CONSOLIDATION OF ACTIONS IN, THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Defendants Mylan Specialty L.P., Mylan Pharmaceuticals Inc., Mylan Inc., Mylan N.V., and Heather Bresch (collectively, "Mylan") respectfully oppose the *Nordstrum* Plaintiffs' Motion to Transfer to, and Consolidation of Actions in, the District of New Jersey Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (the "Motion"). *See* Dkt. 1. Mylan requests that the Panel deny the Motion or, in the alternative, transfer all related cases to the United States District Court for the District of Kansas before the Honorable John W. Lungstrum, where litigation of a consolidated action is already underway.

Mylan agrees that the six related actions identified by various plaintiffs (the "Related Actions") are ripe for transfer and coordination.[1] The allegations in all of these cases relate to

[1] The initial Schedule of Actions, Dkt. 1-3, lists five lawsuits: *In re: EpiPen Auto-Injector Litigation*, Case No. 2:16-cv-02711-JWL-KGG (D. Kan. filed Oct. 18, 2016) (the "*In re EpiPen* Action"); *Aggarwal v. Mylan*, Case No. 1:17-cv-02189 (N.D. Ill. filed Mar. 21, 2017) (the "*Aggarwal* Action"); *Rainey v. Mylan*, Case No. 3:17-cv-05244-RBL (W.D. Wash. filed Apr. 3, 2017) (the "*Rainey* Action"); *Nordstrum v. Mylan*, Case No. 2:17-cv-02401 (D.N.J filed Apr. 7, 2017) (the "*Nordstrum* Action"); and *Sanofi-Aventis U.S. LLC v. Mylan*, Case No. 3:17-cv-02763-FLW-TJB (D.N.J. filed Apr. 24, 2017); (the "*Sanofi* Action"). The Notice of Related

Mylan's marketing and sales practices with regard to the EpiPen® ("EpiPen") Auto-Injector. Each case identifies some combination of Mylan entities as defendants, and three cases also name as defendants some combination of Pfizer Inc. and two of its subsidiaries, Meridian Medical Technologies, Inc. and King Pharmaceuticals LLC (collectively, "Pfizer"). Four of the cases bring claims on behalf of overlapping putative classes of consumers. And while there is some variation in the specific claims asserted in each case, all the Related Actions make similar allegations in support of some combination of antitrust, racketeering, and state-law consumer protection claims. In short, Mylan agrees that the Related Actions are sufficiently similar and should proceed in the same forum, before the same judge.

However, Mylan opposes the Motion because centralization pursuant to 28 U.S.C. § 1407 is neither necessary nor appropriate in this case. Remarkably, plaintiffs' Motion completely ignores the most salient fact to this analysis: Months before the Motion was filed, the plaintiffs in the first-filed *In re EpiPen* Action already voluntarily consolidated eight other EpiPen sales and marketing class actions before Judge Lungstrum in the District of Kansas. Nine putative class actions were filed against Mylan last year, but the plaintiffs in those cases recognized that it did not make sense to litigate duplicative claims in courts scattered across the country. Having determined that the District of Kansas was a fair and convenient forum to litigate all of their claims, they dismissed those various suits and filed a single consolidated complaint in Kansas. *See* Dkt. 13 at 3-5 (*In re EpiPen* plaintiffs "worked diligently to secure an informal solution to coordinating the cases without having to file an MDL petition"). And the *In re EpiPen* action is already well-underway: motions to dismiss have already been filed, the Court has issued

---

Action, ECF No. 7, adds a sixth: *Cesar Castillo, Inc. v. Mylan*, Case No. 2:17-cv-02813 (D.N.J. filed Apr. 25, 2017) (the "*Castillo* Action").

discovery-related rulings, and substantive hearings have been held before Judge Lungstrum and the Magistrate Judge assigned to the case. *See id.* at 9-10; *see also supra* at 4-5.

This is the way the process is supposed to work. As the Panel has held, "centralization under Section 1407 should be the last solution after considered review of all other options, including transfer pursuant to Section 1404 and the first-to-file rule." *In re: Truvia Nat. Sweetener Mktg. & Sales Practices Litig.*, 996 F. Supp. 2d 1377, 1378 (J.P.M.L. 2014) (internal quotation omitted). Likewise, in its April 26 Order, the Panel specifically directed the parties to "address what steps they have taken to pursue alternatives to centralization [through the JPML process.]" *See* Dkt. 4. The best approach is for various plaintiffs to work together to informally coordinate and transfer related actions to one fair and convenient forum—as the plaintiffs in Kansas already have done. There is no reason why further informal consolidation cannot proceed, particularly given that there are only five actions pending outside of the already-consolidated District of Kansas litigation.

Absent voluntary cooperation, the next best method is for the cases to be collected in one forum via motions to transfer under the first-to-file doctrine and/or 28 U.S.C. § 1404(a). Mylan has already filed motions to transfer the five non-Kansas actions to the District of Kansas. This is the favored approach, given the small number of cases and the fact that Section 1404(a) transfer is for all purposes—preventing potential conflict and additional inefficiency down the road, should the cases proceed to trial.

If the Panel nevertheless grants the Motion, then Mylan respectfully urges the Panel to centralize these actions in the District of Kansas before Judge Lungstrum. The Kansas court is already managing the *In re EpiPen* Action; a majority of plaintiffs and all of the defendants support the selection of the District of Kansas, *see* Section II.A *infra*; and that forum is

convenient to all parties and their counsel. The District of Kansas also has the capacity to take on these matters, and Judge Lungstrum has the experience to efficiently handle a complex case like this. As the Panel has previously held, the parties can be "confident that Judge Lungstrum will steer this controversy on a prudent course." *In re: Syngenta AG MIR162 Corn Litig.*, 65 F. Supp. 3d 1401, 1402 (J.P.M.L. 2014).

Accordingly, for all these reasons and those below, the Panel should decline to centralize the Relevant Actions pursuant to Section 1407. If the Panel does decide to create an MDL, however, it should centralize the Related Actions in the District of Kansas before Judge Lungstrum.

## BACKGROUND

*In re EpiPen* and the Earlier-Filed Suits

In August 2016, a plaintiff in Michigan filed the first putative class action related to the pricing and marketing of EpiPen products. Over the next six months, additional EpiPen-related cases continued to be filed across the country, and the number of related suits grew to nine.[2] Each case alleged some combination of deceptive, unfair, or anticompetitive conduct and sought recovery on behalf of a putative class of consumers.

---

[2] *See Johnston v. Mylan*, Case No. 2:16-cv-13060 (E.D. Mich. filed Aug. 23, 2016); *Harwood v. Mylan*, Case No. 2:16-cv-01348 (W.D. Pa. filed Aug. 31, 2016); *Bates v. Mylan*, 1:16-cv-00985-SJD (S.D. Ohio removed Oct. 6, 2016) (filed in Ohio state court Sept. 6, 2016); *Corcoran v. Mylan*, Case No. 3:16-cv-05983 (N.D. Cal. filed Oct. 17, 2016); *Serrano v. Mylan*, Case No. 2:16-cv-02711 (D. Kan. filed Oct. 18, 2016); *Foster v. Mylan*, Case No. 1:16-cv-10702 (N.D. Ill. filed Nov. 17, 2016); *Kozelka v. Mylan*, Case No. 3:16-cv-06526 (N.D. Cal. filed Nov. 11, 2016); *Muchin v. Mylan*, Case No. 4:16-cv-06883 (N.D. Cal. filed Nov. 30, 2016); *Huston v. Mylan*, Case No. 2:16-cv-02796 (D. Kan. filed Dec. 2, 2016). All of these cases except for *Serrano* have since been voluntarily dismissed, and *Serrano* has since been captioned *In re: EpiPen Auto-Injector Litigation*. All but one of these predecessor cases were folded into the consolidated *In re: EpiPen* complaint; *Bates* was voluntarily dismissed but never re-filed.

Ultimately, the plaintiffs in the various EpiPen-related matters coordinated their efforts, which culminated in the February 3, 2017 filing of an amended and consolidated class action complaint in what is now captioned *In re: EpiPen Auto-Injector Litigation*, Case No. 2:16-cv-02711-JWL-KGG (D. Kan.). The consolidated complaint asserts antitrust, racketeering, and state-law consumer protection claims premised on allegations that Mylan increased the price of EpiPen products through impermissible methods. It also alleges that Pfizer entered into an unlawful patent litigation settlement with Teva Parenteral Medicines, Inc. and Teva Pharmaceutical USA, Inc. (collectively, "Teva") concerning EpiPen in 2012 that allegedly delayed the entry of generic EpiPen. These claims are brought on behalf of a putative nationwide class of consumers who were indirect purchasers of EpiPen products.

The *In re EpiPen* Action is progressing efficiently. Mylan and Pfizer filed motions to dismiss on April 14, 2017. Briefing will be complete by the end of June, and Judge Lungstrum has indicated that he hopes to rule on the motions by the end of July. *See* Ex. A at 49:14-19 (Tr. of Apr. 25, 2017 Hearing, *In re: EpiPen Auto-Injector Litigation*, Case No. 2:16-cv-02711-JWL-KGG (D. Kan.)) ("Tr."). The court has already held a hearing addressing a number of discovery issues. *See id*. 27:16-51:12. Judge Lungstrum also has approved a leadership structure for plaintiffs' counsel and has established a website for interested parties to learn more about the case. *See* Ex. B (Order Concerning Appointment of Plaintiffs' Counsel's Leadership Structure, *In re: EpiPen Auto-Injector Litigation*, Case No. 2:16-cv-02711-JWL-KGG (D. Kan. Apr. 25, 2017), ECF No. 109); *In re: EpiPen Auto-Injector Litigation* Website, *available at* http://www.ksd.uscourts.gov/epipen-auto-injector-litigation-civil-case-lead-216-cv-02711-jwl-kgg/ (last visited May 16, 2017).

The Filing of Substantially Similar Cases After *In re EpiPen*

Well after the initial group of *In re EpiPen* plaintiffs joined together to bring one consolidated action in Kansas, additional plaintiffs across the country began to file lawsuits containing substantially similar allegations—in some cases on behalf of duplicative putative classes—regarding Mylan's marketing and sale of EpiPen products. Each of these five later-filed cases involves factual allegations and legal claims that overlap with those in the consolidated *In re EpiPen* complaint:

- The *Aggarwal* Action asserts Illinois consumer protection claims against Mylan that are duplicative of claims asserted in the *In re EpiPen* Action, on behalf of a putative class that is wholly subsumed by the putative class in *In re EpiPen*. The few factual allegations in the *Aggarwal* Complaint are also included in the *In re EpiPen* Complaint, including allegations about EpiPen price increases, Mylan's decision to sell EpiPen products in packages of two, and correspondence from members of Congress to Mylan. *See* Ex. C (*Aggarwal* Mem. ISO Mot. Transfer) at 3-7.

- The *Rainey* Action asserts racketeering and state-law consumer protection claims against Mylan on behalf of a putative national class of consumers who were indirect purchasers of EpiPen products. The *Rainey* plaintiffs allege that Mylan unlawfully cooperated with pharmacy benefit managers ("PBMs") to increase prices, and their claims hinge on factual allegations also present in the *In re EpiPen* Complaint such as supposedly "inflated" prices and alleged efforts to exclude competitors from the marketplace. *See* Ex. D (*Rainey* Mot. Transfer) at 3-6.

- The *Nordstrum* Action asserts antitrust and consumer protection claims against Mylan and Pfizer on behalf of a putative nationwide class of consumers who were indirect purchasers of EpiPen products. As with the *Rainey* Complaint, these claims are based on factual allegations related to PBMs and are similar to those asserted in the *In re EpiPen* Complaint. *See* Ex. E (*Nordstrum* Br. ISO Mot. Transfer) at 4-8.

- The *Castillo* Action likewise asserts antitrust claims against Mylan and Pfizer based on allegations that Mylan improperly paid PBMs to maintain its market share and, once again, includes factual allegations that also appear in the *In re EpiPen* Complaint, such as allegations about the patent system and the EpiPen4Schools® program. The *Castillo* Action asserts these claims on behalf of a putative nationwide class of persons and entities who directly purchased an

EpiPen device or related generic equivalent from one of the Defendants. *See* Ex. F (*Castillo* Br. ISO Mot. Transfer) at 4-8.

- The *Sanofi* Action asserts antitrust claims against Mylan based on allegations that Mylan used its market share to exclude Sanofi from the epinephrine auto-injector market. Like the *In re EpiPen* plaintiffs, Sanofi alleges that Mylan engaged in anticompetitive conduct, including patent infringement lawsuits and settlements designed to remove competition, among other things.[3] *See* Ex. G (*Sanofi* Br. ISO Mot. Transfer) at 5-9.

The *Nordstrum* Plaintiffs' Section 1407 Motion

On April 24, 2017, months after the consolidated complaint was filed in the *In re EpiPen* Action, and after Mylan and Pfizer had already filed a motion to dismiss the *In re EpiPen* Action, plaintiffs in the *Nordstrum* Action filed a motion to transfer all of the then-filed Related Actions to the District of New Jersey for coordinated or consolidated pretrial proceedings. The *Nordstrum* Plaintiffs note the "substantial and factual overlap among the Related Actions" and state that "Plaintiffs in the Related Actions allege the same or substantially similar misconduct on the part of one or more of the Defendants to increase the price of EpiPens, and allege largely the same facts regarding the epinephrine auto-injector market and Defendants." Dkt. 1-1 at 2 ("Br."). Therefore, plaintiffs claim, transfer to a single court "will streamline and simplify the discovery phase, pretrial motions (including class certification), administrative management, and

[3] Sanofi contends in its opposition to the *Nordstrum* Plaintiffs' motion that the presence of "sham" patent infringement litigation allegations in the other Related Actions will "inject[ ] fact and expert discovery issues . . . that are not present in the Sanofi Action." Dkt. 33 at 6. This is puzzling, given that Sanofi's Complaint includes many of the same allegations about the supposed sham patent infringement litigation as do the other Related Actions. *See, e.g.*, Ex. H (*Sanofi* Complaint) at ¶¶ 28, 131-134. Sanofi's other arguments about why its suit is distinct from the other Related Actions are similarly unpersuasive. Certainly, there are aspects of Sanofi's Complaint that differ from the complaints in the other Related Actions. But those differences are far outweighed by the similarities among the suits, and by the efficiencies that would be gained if the cases are all transferred to the same district, before the same judge. *See* Ex. G at 7-9, 11-16. Mylan does, however, agree with one argument Sanofi makes in its opposition: centralization pursuant to Section 1407 is not necessary in this case.

will reduce the waste, confusion, and delay that would arise from prosecuting each of the Related Actions and any subsequently filed actions separately." *Id.*

Mylan's Motions to Transfer the Related Actions

Because the consolidated *In re EpiPen* Action is already pending before Judge Lungstrum in the District of Kansas, Mylan believes that the most appropriate way to consolidate the non-Kansas actions is by transfer, not through the creation of an MDL. Accordingly, Mylan has filed motions to transfer all of the non-Kansas Related Actions to the District of Kansas.[4] *See* Exs. C-G (motions to transfer *Aggarwal*, *Rainey*, *Nordstrum*, *Sanofi*, and *Castillo* Actions). Pfizer has joined in support of Mylan's motions to transfer.

In these motions, Mylan argues that the non-Kansas Related Actions are substantially similar—and in some cases, entirely duplicative—of the first-filed *In re EpiPen* Action. The cases contain similar factual allegations regarding price increases, marketing and sales practices, corporate strategy, and allegedly anticompetitive behavior. *See supra* at 4-7. And because the *In re EpiPen* Action was filed well in advance of the other actions, is actively proceeding, and itself already constitutes a critical mass of the originally filed cases, Mylan respectfully submits that all the remaining cases should be transferred to the District of Kansas.

[4] The *In re EpiPen* plaintiffs agree with Mylan that "consolidation or coordination for pretrial proceedings under 28 U.S.C. § 1407 is neither needed nor appropriate now." Dkt. 13 at 2; *see also id.* at 7 ("[T]ransfer of the other Related Actions to the District of Kansas under 28 U.S.C. § 1404 remains open to the Mylan Defendants, who have stated on the record that they prefer to litigate the cases in Kansas."). The *In re EpiPen* Plaintiffs also filed motions requesting that Judge Lungstrum stay the later-filed cases and allow the *In re EpiPen* Action to proceed. They have since agreed to defer briefing on the stay motions, however, until there are rulings on Mylan's transfer motions and this Motion to create an MDL.

## ARGUMENT

### I. CENTRALIZATION PURSUANT TO SECTION 1407 IS NEITHER NECESSARY NOR APPROPRIATE.

It is well established that centralization pursuant to Section 1407 "should be the last solution after considered review of all other options." *In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). "Seeking transfer under Section 1404(a) or seeking to dismiss or stay duplicative actions under the first-to-file doctrine are among the variety of options available to avoid duplication of efforts." *Id.* Here, centralization via an MDL is unnecessary because various parties—defendants and some plaintiffs—are already pursuing these other options. Granting the Motion notwithstanding the substantial efforts these parties have already taken would undermine the principle that alternative forms of coordination are preferred. It also would fail to resolve the possibility of duplicative proceedings and inconsistent results.

#### A. Centralization Pursuant to Section 1407 Is Unnecessary Because the Parties Are Already Working to Transfer and Consolidate the Related Actions.

In its notice scheduling briefing on plaintiffs' Motion, the Panel specifically recognized that centralization under Section 1407 should be the "last solution," instructing that "[i]n their briefs, the parties should address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)." Dkt. 4. Consideration of those steps makes clear that Section 1407 centralization is unnecessary, because the parties are already pursuing alternatives that would moot the need for this Panel to act.

The process of coordination and consolidation has already occurred. The *In re EpiPen* Action is the result of plaintiffs and counsel from eight geographically disparate cases joining

together to ensure the efficient resolution of duplicative actions, all based around the same central allegations, in the District of Kansas. *See supra* at 4-5. In addition, Mylan has already filed Section 1404(a) motions to transfer all of the later-filed Relevant Actions to the District of Kansas, where Judge Lungstrum is presiding over the *In re EpiPen* Action. *See* Exs. C-G. It is probable, therefore, that all of the Relevant Actions will end up in one forum, before one judge, even without action by the Panel.

The pendency of Mylan's Section 1404(a) motions "weigh[s] against centralization" through the MDL process. *In re OSF Healthcare Sys. ERISA Litig.*, MDL No. 2749, 2016 WL 7221923, at *1 (J.P.M.L. 2016); *see also In re Air Crash Over the Hudson River Near New York, New York on August 8, 2009*, 716 F. Supp. 2d 1360, 1360 (J.P.M.L. 2010) ("While transfer under Section 1407 for pretrial purposes can streamline litigation, thereby benefitting the parties and the courts, *transfer under Section 1404(a) for all purposes should be attempted*, where appropriate.") (emphasis added). Indeed, the Panel has denied centralization in cases like this where there was a "reasonable prospect" that pending Section 1404(a) motions would eliminate the multidistrict character of the relevant actions. *See, e.g., In re Republic W. Ins. Co. Ins. Coverage Litig.*, 206 F. Supp. 2d 1364, 1365 (J.P.M.L. 2002) ("Since the result of any Section 1404 transfer would also eliminate any need for our action under Section 1407, the Panel has concluded to deny transfer under Section 1407 at this time."). The same is true here. The Panel should deny the *Nordstrum* plaintiffs' Motion, because Mylan's pending Section 1404(a) motions—in addition to the already-pending *In re EpiPen* Action—will allow for consolidation of all the Related Actions in the District of Kansas without the need for the creation of an MDL.[5]

[5] Furthermore, denial of the Motion at this time poses no threat of prejudice to the various parties. If Mylan does not prevail on its Section 1404(a) motions, and if the parties are not able to come to some acceptable voluntary resolution of the issue, then any party may seek Section

**B. Centralization Pursuant to Section 1407 Is Not Appropriate in this Case.**

Mylan does not dispute that transfer and consolidation of the Related Actions would be best for the convenience of the parties, witnesses, and counsel, and that it would further fairness and "minimize[e] the inconvenience, inefficiencies and expense of redundant and duplicative" proceedings. Br. at 7. However, centralization *pursuant to Section 1407* is not only unnecessary in this instance for the reasons stated above; it is also inappropriate for three additional reasons.

First, there are only a small number of cases to be consolidated. "[W]here only a minimal number of actions are involved, the proponent bears a heavier burden to demonstrate that centralization is appropriate." *In re Capacitors Antitrust Litig. (No. II)*, 2016 WL 7188803, at *2 (citing *In re Transocean Ltd. Sec. Litig. (No. II)*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010)). Here, fourteen EpiPen-related lawsuits have been filed, but the first nine of those already have been dismissed or consolidated in the District of Kansas, leaving only five cases that need to be addressed. Moreover, transfer and consolidation of those five Related Actions through Section 1404(a) motions is not only practicable but already underway. Thus, there is no need for the MDL process at this time.

Second, centralization of the Related Actions pursuant to Section 1407 would undermine this Panel's clear preference that parties "pursue alternatives to centralization." The *In re EpiPen* plaintiffs voluntarily worked together over the course of months to consolidate their separately filed cases into a single proceeding in the District of Kansas. Rather than joining in that effort, the *Nordstrum* plaintiffs waited more than two months before filing a substantially

---

1407 centralization at that time. *See In re Capacitors Antitrust Litig. (No. II)*, 2016 WL 7188803, at *2 ("Thus, if transfer ultimately cannot be effectuated through Section 1404, voluntary cooperation and coordination among the parties and the involved courts may be feasible with respect to common discovery and pretrial proceedings. Alternatively, the parties may at that time again seek centralization under Section 1407.") (internal citations omitted).

similar suit in the District of New Jersey. *See Nordstrum v. Mylan*, Case No. 2:17-cv-02401 (D.N.J filed Apr. 7, 2017). The same is true of the other Related Actions. *See Aggarwal v. Mylan*, Case No. 1:17-cv-02189 (N.D. Ill. filed Mar. 21, 2017); *Rainey v. Mylan*, Case No. 3:17-cv-05244-RBL (W.D. Wash. filed Apr. 3, 2017); *Sanofi-Aventis U.S. LLC v. Mylan*, Case No. 3:17-cv-02763-FLW-TJB (D.N.J. filed Apr. 24, 2017); *Cesar Castillo, Inc. v. Mylan*, Case No. 2:17-cv-02813 (D.N.J. filed Apr. 25, 2017)). To grant the Motion for centralization would ignore and discourage the work that has already gone into streamlining these matters.

Third, transfer and consolidation of the Related Actions for all purposes pursuant to Section 1404(a) is preferable to centralization under Section 1407. Transfer pursuant to Section 1404 is "particularly advantageous" because it

> is for all purposes, including trial. For this reason, transfer under Section 1404(a)—where appropriate—can result in a more streamlined action, without the procedural necessity of remand to the transferor court that is required under Section 1407. *This alone produces significant advantages*. It allows for the possibility of consolidation of actions for trial, which potentially avoids the increased costs associated with multiple trials after the Panel remands actions to the various transferor courts once pretrial proceedings are concluded.

*In re Capacitors Antitrust Litig. (No. II)*, MDL No. 2748, 2016 WL 7188803, at *2 (J.P.M.L. Dec. 7, 2016) (internal quotation omitted) (emphasis added)). Mylan believes that the Relevant Actions are, without exception, meritless. Yet it is undeniable that, if these Actions were to proceed to trial, it would be significantly more efficient for them to be consolidated before the same judge who presided over dispositive motions, discovery, and class certification.

At bottom, then, centralization pursuant to Section 1407 is neither necessary nor appropriate here. The Panel should deny the *Nordstrum* plaintiffs' Motion and allow the parties to resolve the issues of transfer and consolidation through other, preferable methods that are already underway.

## II. IF THE PANEL DOES CENTRALIZE THE RELATED ACTIONS PURSUANT TO SECTION 1407, IT SHOULD TRANSFER THEM TO THE DISTRICT OF KANSAS.

If the Panel nevertheless determines that centralization pursuant to Section 1407 is appropriate, it should centralize the Related Actions in the District of Kansas. Contrary to the *Nordstrum* plaintiffs' arguments, *see* Br. at 9, and for the reasons described below, all of the relevant factors—(1) the preference of a majority of the parties; (2) the accessibility and convenience of the proposed transfer district; and (3) the experience and capacity of the transferee district—support centralization in the District of Kansas before Judge Lungstrum. *See, e.g.*, *In re: Rye Select Broad Mkt. Prime Fund Sec. & Employee Ret. Income Sec. Act (ERISA) Litig.*, 648 F. Supp. 2d 1385 (J.P.M.L. 2009) (preference of parties); *In re Power Morcellator Prod. Liab. Litig.*, 140 F. Supp. 3d 1351, 1354 (U.S. Jud. Pan. Mult. Lit. 2015) (accessibility and convenience); *In re Motor Fuel Temperature Sales Practices Litig.*, 493 F. Supp. 2d 1365 (J.P.M.L. 2007) (experience and capacity).

### A. Most of the Parties Prefer the District of Kansas.

A majority of the parties agree that the District of Kansas is the best forum for these cases. All of the defendants prefer Kansas. *See* Pfizer Defs.' Resp. And, critically, plaintiffs from *eight* different cases filed in courts across the country decided that Kansas was the most appropriate forum for this action: the *In re EpiPen* Action is the result of negotiations among plaintiffs in those cases from California, Connecticut, Illinois, Kansas, Kentucky, Massachusetts, Michigan, New Hampshire, and New York.

That the *Nordstrum* plaintiffs, late to the party, would prefer to litigate their duplicative claims in New Jersey should not outweigh the result of months of negotiations and the agreement of a majority of plaintiffs and all defendants. The *In re EpiPen* Action is the first-filed case and,

as discussed below, it is pending in an accessible and convenient forum. *See In re: Bank of Am. Wage & Hour Employment Practices Litig.*, 706 F. Supp. 2d 1369, 1371 (J.P.M.L. 2010) (concluding that the District of Kansas would be "the best forum" because, *inter alia*, the "first-filed [ ] action is pending in that district"); *see also In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) ("[I]t is appropriate to give the first-filed criterion some weight in selecting a transferee district.") (internal quotation omitted); *In re Wholesale Grocery Prod. Antitrust Litig.*, 663 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) (selecting transferee district because "the first-filed action is pending there, and pretrial proceedings in that action have proceeded efficiently"). If the *Nordstrum* plaintiffs are truly concerned with efficiency and convenience, they are free to agree to transfer their case to the District of Kansas. Otherwise, their preference to litigate in New Jersey should not prevail over the considered judgment of a majority of the plaintiffs and all the defendants in these cases.

### B. The District of Kansas is the More Accessible and Convenient Forum for All Parties.

As the Panel has previously held, the District of Kansas is "readily accessible," *In re: Syngenta AG MIR162 Corn Litig.*, 65 F. Supp. 3d 1401, 1402 (J.P.M.L. 2014) (transferring cases to Lungstrum, J.), and "centrally located," *In re: Bank of Am. Wage & Hour Employment Practices Litig.*, 706 F. Supp. 2d 1369, 1371 (J.P.M.L. 2010). Here, the District of Kansas also presents a forum that is convenient to *all* parties—not just those later-filing plaintiffs who are located in and around Newark, New Jersey.

The *Nordstrum* plaintiffs' insistence that New Jersey is the most convenient forum for the Defendants—despite Defendants' own protests to the contrary—is without merit. The Mylan Defendants are located in Canonsburg, Pennsylvania (a suburb of Pittsburgh), and Morgantown, West Virginia, and all relevant employees and evidence are now located in either Canonsburg or

Morgantown. Plaintiffs' claim that Mylan Specialty was located in New Jersey "at all relevant times during the class periods," Br. at 9 n.7, is wrong: Mylan Specialty moved its operations to Canonsburg in 2013. *See In re EpiPen* Compl. ¶ 352 (January 1, 2009 until present); *Aggarwal* Compl. ¶ 46 (March 21, 2014 until December 1, 2016); *Rainey* Compl. ¶ 97 (no period defined); *Nordstrum* Compl. ¶ 212 (2009 until present); *Castillo* Compl. ¶ 22 (April 25, 2013 until present). Meanwhile, the Pfizer entities are located in New York, New York (Pfizer Inc.), Columbia, Maryland (Meridian Medical Technologies, Inc.), and Bristol, Tennessee (King Pharmaceuticals LLC).

In short, not one of the Defendants—not one—is located in New Jersey. The location of documents and other evidence is irrelevant given electronic discovery practices. None of Defendants' employees, who presumably will compose a majority of witnesses and deponents if these cases proceed, are located in New Jersey. And, as a practical matter, there is functionally no difference in distance between Defendants' locations and the two alternative forums given modern transportation options. Both proposed forums are a short flight (or a drive) away from most Defendants' various locations.

At the same time, Kansas is likewise more convenient to the plaintiffs—and their counsel—taken as a whole. There are fifty-eight total named plaintiffs in the six cases at issue. Of those, only two are located in New Jersey. All the rest—*ninety-seven percent*—are located outside New Jersey and are dispersed throughout the country, from coast to coast. Likewise, the lawyers for the parties hale from places including Seattle, Houston, Chicago, Kansas City, and Michigan. Even the moving Plaintiffs' own counsel have a national presence, with 23 offices in the U.S., including Los Angeles, Chicago, and Nashville. And the attorneys who signed the

motion have offices in places like San Diego, California and Boca Raton, Florida. There can simply be no dispute that this is a national case with national plaintiffs and national counsel.[6]

Consequently, the District of Kansas is a more convenient and practical forum for the resolution of these matters. It is centrally located in the middle of the country and readily accessible to plaintiffs and counsel on the West Coast (*Aggarwal*, *Nordstrum*, *Rainey*), on the East Coast (*Aggarwal*, *Cesar Castillo*, *Nordstrum*, *Sanofi*), in the Midwest (*Aggarwal*), to the South (*Nordstrum*), outside the continental United States (*Castillo*), and spread all over the country (*In re EpiPen*). Indeed, the *Nordstrum* Plaintiffs reside in Colorado and Ohio, while their counsel are located in California, Florida, Pennsylvania, New York, and New Jersey. *See* Nordstrum Compl. ¶¶ 14-15; *id.* at 62. Moreover, the JPML has repeatedly determined that the District of Kansas is a convenient forum in which to try putative nationwide class actions. *See, e.g.*, *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 209 F. Supp. 2d 1385, 1386 (J.P.M.L. 2002) (the District of Kansas's "geographically central location is relatively convenient for the parties" in total, particularly given the "dispersed location[s] of constituent actions"); *In re Urethane Antitrust Litig.*, 333 F. Supp. 2d 1379, 1381 (J.P.M.L. 2004) ("In concluding that the District of Kansas is an appropriate forum for this docket, we note that [ ] the district is a geographically convenient location, given the nationwide scope of this litigation."). There is no reason to depart from that conclusion here.

[6] The claim that "the District of New Jersey is the geographical nexus of this litigation" is without any basis. Br. at 10. The *Nordstrum* plaintiffs—like the plaintiffs in a majority of the Related Actions—assert claims on behalf of consumers throughout the country, based on allegations of conduct that bear no particular connection to New Jersey. And claiming that Newark, where none of the Defendants is located, is somehow the "nexus" because it is slightly closer than the District of Kansas is nothing more than attributing legal significance to preference.

### C. The District of Kansas Has the Experience and Capacity to Efficiently Handle These Actions.

In addition to the parties' preferences and the relative convenience of the forum, the Panel considers the forums' capabilities in terms of capacity and experience with similarly complex litigations. *See In re Motor Fuel Temperature Sales Practices Litig.*, 493 F. Supp. 2d at 1367 ("[W]e have searched for a transferee judge with the time and experience to steer this litigation on a prudent course and sitting in a district with the capacity to handle this litigation. Accordingly, we select the District of Kansas—which is relatively conveniently located for many parties and witnesses—as transferee district for this litigation."). On both fronts, the District of Kansas is well suited to host the Related Actions.

First, the District of Kansas has "docket conditions that are significantly more favorable than the other primary contenders for this litigation." *In re: Bank of Am. Wage & Hour Employment Practices Litig.*, 706 F. Supp. 2d at 1372. There is only one MDL currently pending in Kansas, as opposed to ***seventeen*** in the District of New Jersey. *See* List of Pending MDL Dockets, *available at* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-17-2017.pdf (last visited May 17, 2017). Similarly, the District of New Jersey handles far more cases—and takes longer to resolve each one on average—than the District of Kansas. *See* Federal Court Management Statistics – Comparison Within Circuit, *available at* http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2016.pdf (last visited May 17, 2017) (listing the median time from filing to trial in civil cases as 38.8 months in the D.N.J, as compared to 22.7 months in the D. Kan.).

Second, by "assigning this litigation to Judge John W. Lungstrum, [the Panel would be] select[ing] a transferee judge who is well-versed in the nuances of complex, multidistrict

litigation." *In re: Syngenta AG MIR162 Corn Litig.*, 65 F. Supp. 3d 1401, 1402 (J.P.M.L. 2014). The Panel has repeatedly sent complex matters to Judge Lungstrum because he "has the experience, energy and time" to handle these cases "efficiently." *In re: Bank of Am. Wage & Hour Employment Practices Litig.*, 706 F. Supp. 2d at 1371-72; *see also In re Urethane Antitrust Litig.*, 333 F. Supp. 2d 1379, 1381 (J.P.M.L. 2004); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 209 F. Supp. 2d 1385, 1386 (J.P.M.L. 2002); *see also* Ex. I 6:5-7 (Tr. of May 4, 2017 Telephone Hearing, *In re: EpiPen Auto-Injector Litigation*, Case No. 2:16-cv-02711-JWL-KGG (D. Kan.) (Judge Lungstrum has been an MDL transferee judge on "numerous occasions" and "respect[s] the MDL process"). Furthermore, as Judge Lungstrom noted at a recent hearing in *In re EpiPen*, the District of Kansas has "very experienced magistrate judges who are very specialized in not only the mechanics of discovery but really how best to move cases in the pretrial process." Tr. 27:1-4. The Magistrate Judge assigned to *In re EpiPen* is the Honorable Kenneth G. Gale.

The District of Kansas has the capacity to handle these matters, and Judge Lungstrum and his colleagues are experienced, able, and prepared to do so. This Panel can be "confident that Judge Lungstrum will steer this controversy on a prudent course." *In re: Syngenta AG MIR162 Corn Litig.*, 65 F. Supp. 3d at 1402.

**CONCLUSION**

Because Mylan is actively pursuing transfer options to ensure that the Related Actions are coordinated and consolidated, and for all of the other aforementioned reasons, Mylan respectfully requests that the Panel deny the *Nordstrum* plaintiffs' Motion. In the alternative, if the Panel does decide to centralize the Related Actions, Mylan requests that the Panel select the District of Kansas as the most convenient and appropriate forum.

Dated: May 17, 2017

Respectfully submitted,

/s/ Mitchell E. Zamoff

Mitchell E. Zamoff
HOGAN LOVELLS US LLP
80 South Eighth Street, Suite 1225
Minneapolis, MN 55402
Telephone: (612) 402-3000
Facsimile: (612) 402-3001
mitch.zamoff@hoganlovells.com

Adam K. Levin
David M. Foster
Kathryn M. Ali
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-6846
Facsimile: (202) 637-5910
adam.levin@hoganlovells.com
david.foster@hoganlovells.com
kathryn.ali@hoganlovells.com

*Counsel for Mylan Specialty L.P., Mylan Pharmaceuticals Inc., Mylan Inc., Mylan N.V., and Heather Bresch*